Raymond BATTS et al., Appellants,

v.

Martha FUGATE et al., Appellees.

Court of Appeals of Kentucky.

Feb. 14, 1958.

Rehearing Denied Dec. 12, 1958.

Alfred W. Minish, Carrollton, L. T. Peniston, New Castle, for appellants.

J. Wirt Turner, Jr., Turner & Jones, New Castle, for appellees.

CLAY, Commissioner.

We have before us for construction a holographic will containing both latent and patent ambiguities. Our question is whether or not the Chancellor properly adjudged the interests in two tracts of real estate. Counsel for both parties have filed excellent briefs which admirably present the issues. We recommend these briefs to those interested in the proper method of presenting a controversy to this Court under the provisions of RCA 1.210.

At the time of her death the testatrix owned a "home place" consisting of about 112 acres of land, and another tract of 60 acres known as the "lower place". Our problems are: (1) how to divide the "home place" and (2) who acquires the "lower place".

1. The Home Place

The "home place" is bounded on the east by the farm of Edward Fox and on the south by the farm of Joe Ransdell. It is divided laterally in the middle from east to west by a county road (which passes the Fox farm). It is divided into two almost equal parts in the other direction by a "holler" running north and south. In the northwest sector is a corncrib on a ridge. This brief description will give us some understanding of the will. It is as follows:

"My last will Feb. 1953 at my death I want Abe to have the home place his lifetime at his death I want Raymond Batts to have *from the road* in front of boxes (Foxes) to Joe Ransdells fence and there to holler Martha to have the rest *on their side of the road and down the rige by corn crib* the rest of the children to have the lower place *and the lower place Raymonds* give the baby calf to Sherley give the other children one cow together children to have the pranna. (Our emphasis.)

Mary Meeks
If one sells out I want them to sell to one of the other ones."

■ The controversy over the "home place" is between Raymond Batts and Martha Fugate. Admittedly each has a remainder interest therein. Admittedly the word "boxes" in the will should be "Foxes", and the beginning point of the description is the road in front of the Fox farm.

The Chancellor found that Raymond was devised the southeastern section of the farm, bounded on the east by the Fox property, the south by Joe Ransdell, the west by the "holler" and the north by the road. Raymond contends that his property is not bounded on the north by the road, but that he was devised all the land lying east of the "holler". This division would give him and Martha each approximately one-half of the "home place" (the dwelling is on Martha's half). He also contends that unless the will is so construed, the northeastern section of the farm will pass as intestate property because the only property north of the road devised to Martha was that "down the rige", which encompasses only that portion of the property lying west of the "holler".

Martha and Raymond were both natural objects of the testatrix' bounty. Martha and her six children had lived with the testatrix for the last 16 years. Raymond was her only nephew. In other instruments written by her as wills (which were not legally sufficient), both before and after the one we are considering, the testatrix had attempted to divide the "home place" between the two. In a writing executed a few months after the one under consideration, an attempt had been made to devise Raymond only the southeastern section *up to the road.*

We believe the Chancellor gave undue weight to the description appearing in the

subsequent abortive will, which definitely limited Raymond to the southeastern sector of the land. (We have some doubt about the competency of this later writing, but the question is not raised.)

In the will before us the beginning *point* of the Batts devise is the road in front of the Foxes. The will does not say that this road *across the farm* is the northern boundary. (The later ineffective will did identify this road as the northern boundary.) The description outlines a boundary from the point of beginning to Ransdell's fence and from thence to the "holler". There the description ends. To make it close, it is logical to continue up the "holler" to the northern boundary of the "home place", thence to the eastern boundary, and thence back to the point of beginning.

Perhaps this construction would not be plausible if the testatrix had devised Martha the land north of the road, or even simply the rest of the "home place". This was not done. Martha was given the rest "on their side of the road and down the rige by corn crib". Since the house was located south of the road and west of the "holler", the reference to "their side of the road" seems to indicate the southwestern sector. Going north from there "down the rige by corn crib" seems clearly to be the northwest sector bounded on the east by the "holler". We cannot construe the will as giving Martha any land east of the "holler". As a matter of fact, it is reasonable to say that the testatrix, in describing Martha's devise, mistakenly used the word "road" when she meant "holler".

Since Martha was only devised the western half of the "home place" bounded on the east by the "holler", the northeast sector would pass as intestate property unless it was given to Raymond. (The record indicates in that event he would inherit this property as the heir at law.) It being clear that the testatrix intended to dispose of the entire "home place" and because the law favors testacy rather than intestacy, we have concluded that Raymond ac-quired the remainder interest in the entire eastern half thereof lying east of the "holler".

## 2. The Lower Place.

With respect to the "lower place" Raymond contends that he either gets it all or divides it with his own children. The clause in the will which presents the difficulty is "the rest of the children to have the lower place and the lower place Raymonds".

Raymond contends that the attempted devise of the "lower place" to "children" was ineffective because the last part of this clause gave it him, and where there are two inconsistent devises of a particular piece of property, the last controls. Martha responds that this rule only applies if the last devise is as plain and decisive as the first, which she says is not true in the present case. The Chancellor treated the phrase "and the lower place Raymonds" as surplusage.

We are unable to determine from the will who the testatrix intended should have the "lower place". When she referred to "the rest of the children", she may well have meant Martha's children. (Not having mentioned any children theretofore, it is difficult to understand what she had in mind when she referred to "the rest".) However, when she said "and the lower place Raymonds", it appears she was referring to Raymond's children. It is clear that she must have meant something by the reference to "Raymonds".

■ We have desperately tried to draw some reasonable meaning from the language used by the testatrix, but are unable to do so. We do not believe it proper to treat as surplusage language in a will which was clearly intended to have some meaning and significance. As did the Chancellor, we are inclined to believe that the testatrix wished Martha's children to have the "lower place" (she gave it to them in the later will), and perhaps it might be more equitable for them to have

it. However, it is not the province of the trial court or this Court to write a better will for the deceased. Unless a testator can express his wishes with sufficient clarity to make his intention effective, the devise must be held void for uncertainty. Futrell v. Futrell's Executor, 224 Ky. 814, 7 S.W.2d 232. We may only construe the will and not the equities. In our opinion the testatrix failed to dispose of the "lower place" to any identifiable devisee.

For the reasons stated the judgment must be reversed.

The judgment is reversed with directions to enter one in conformity with this opinion.